**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
AT MANHATTAN**

| | |
|---|---|
| **KEVIN BACHHUBER**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MARCAS ASSET MANAGEMENT LLC**, doing business as:<br>**MARCAS CAPITAL,**<br><br>Defendant. | No. 1:26-cv-02659<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

## <u>CLASS ACTION COMPLAINT</u>

1.     Kevin Bachhuber ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Marcas Asset Management LLC ("Marcas" or "Defendant").

2.     This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.     Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4.     Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

### PARTIES

5.     Plaintiff Kevin Bachhuber is a natural person and a citizen of Madison, Wisconsin. He is domiciled in Wisconsin, where he intends to remain.

1

6.      Defendant Marcas is a domestic limited liability company formed in New York and with its principal place of business at 447 Broadway, New York, New York, 10013.

## JURISDICTION AND VENUE

7.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8.      This Court has personal jurisdiction over Defendant because it is headquartered in New York, regularly conducts business in New York, and has sufficient minimum contacts in New York.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

### *The Telephone Consumer Protection Act*

10.     Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11.     "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of

2

the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

12.    As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

13.    The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

14.    For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

15.    Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

16.    The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

17.    The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

18.    The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id.*

3

19.    For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***Plaintiff Kevin Bachhuber***

20.    Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

21.    Plaintiff's residential telephone number is 608-345-XXXX (the "telephone number").

22.    To avoid unsolicited telemarketing calls, Plaintiff personally placed his telephone number on the National Do-Not-Call Registry on March 17, 2012. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call Registry.

23.    Plaintiff uses his telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

24.    Plaintiff has not used his telephone number for business purposes.

25.    Plaintiff has not associated his telephone number with any business.

26.    Plaintiff has been the sole owner (i.e., user) of his telephone number for approximately the past fourteen (14) years.

27.    During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his telephone number.

28.    Plaintiff has never received a reimbursement from any business for his telephone number.

29.    Plaintiff has never taken a business-related tax-deduction for his telephone number.

30.     From 2014 to 2016, while Plaintiff was associated with the business Big Cricket Farms, Plaintiff maintained a separate business telephone number for business related calls. That telephone number is not the subject of this litigation.

31.     From 2016 to 2024, during Plaintiff's association with the business Bachhuber Consulting LLC, Plaintiff maintained a separate telephone number of 605-512-XXXX for business related calls. That telephone number is not the subject of this litigation.

32.     The Bachhuber Consulting website, which is no longer in operation, displayed the number 605-512-XXXX, not Plaintiff's 608-345-XXXX telephone number. Below is a screenshot from the Internet Archive displaying the "Contact" section of the website for Bachhuber Consulting:



33.     Similarly, Plaintiff's business cards listed his number as 605-512-XXXX, not his 608-345-XXXX telephone number.

34.     In fact, if Plaintiff received a business-related call on his telephone number, he would redirect the caller to his business number.

35.    Plaintiff's voicemail during the operation of Bachhuber Consulting played a message to the effect of the following: "You have reached the personal cell of Kevin Bachhuber. For business-related calls, please contact me at 605-512-XXXX."

36.    Plaintiff is not a current or former customer of Defendant.

37.    Plaintiff has never had a business relationship with Defendant.

38.    Plaintiff never provided his telephone number to Defendant.

39.    Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

### *Defendant Engages in Telemarketing*

40.    Defendant is a business lending firm that offers "various loan types such as SBA loans, equipment financing, and Real Estate Financing."[1]

41.    Simply put, Defendant sells loan services.

42.    Screenshots Defendant's website and LinkedIn are provided below.[2]



_____

[1] *About Us*, MARCAS CAPITAL, https://marcascapital.com/#about (last visited Mar. 27, 2026); *MarCas Capital*, LINKEDIN, https://www.linkedin.com/company/marcas-capital/about/ (last visited Mar. 27, 2026).
[2] *Id*.

6



43. Notably, in Defendant's industry, telemarketing is a widespread and standard practice.[3] Indeed, the Bureau of Labor Statistics has reported that the "Credit Intermediation and Related Activities" industry has one of the highest levels of telemarketing.[4]

44. To sell its services, Defendant (or its third-party agents) engages in telemarketing campaigns.

***Defendant violated the TCPA***

45. As explained below, Defendant violated the TCPA numerous times.

46. Defendant first contacted Plaintiff by telephone on January 21, 2026. Since then, Plaintiff has received at least seven (7) text messages from Defendant, all originating from the same telephone number: (971) 406-3913.

---

[3] *Occupational Employment and Wage Statistics: Telemarketers*, U.S. CENSUS BUREAU (May 2023) https://www.bls.gov/oes/2023/may/oes419041.htm.
[4] *Id*.

47. Defendant placed numerous telephonic solicitations to Plaintiff's telephone number—including, on information and belief, the following:

    a.    January 21, 2026, at 9:56 a.m. from (971) 406-3913:

        "Hi Kevin, Happy New Year As businesses reset for the year, access to the right capital makes a big difference. Would an extra $100,000 in working capital help you start 2026 stronger? I also sent you a quick email with details- did you happen to see it? Reply QUIT to Unsubscribe Thanks, MarCas Capital LLC"

    b.    January 22, 2026, at 9:41 a.m. from (971) 406-3913.

        "Kevin, Just following up. We specialize in helping small businesses secure real funding solutions, not one-size-fits-all offers. If it makes sense, I'd love to take 5-10 minutes to see whether $100,000 in capital is a fit for you. What does your availability look like?"

    c.    February 2, 2026, at 11:30 a.m. from (971) 406-3913.

        "Kevin, quick insight: One of the biggest reasons businesses struggle isn't sales- it's timing and cash flow. The right financing at the right time can be the bridge between stress and growth. Open to a short conversation to explore options?"

    d.    February 3, 2026, at 10:04 a.m. from (971) 406-3913.

        "Kevin we just helped a local business secure $75,000 with flexible terms and they're already putting it to work. I'm confident we can explore similar options for you. Would today or tomorrow work for a quick call?"

    e.    February 9, 2026, at 12:36 p.m. from (971) 406-3913.

        "Kevin, I haven't been able to catch you yet; quick question. Is it timing, interest, or just needing more information that's holding things up? Most businesses explore captial at some point, happy to make this simple and pressure free."

    f.    February 9, 2026, at 12:36 p.m. from (971) 406-3913.

        "Kevin if speed matters, we can move quickly. IN many cases, starting today means having answeres as early as tomorrow or even funded in couple hours. Do you have a few minutes to talk and see what's possible?"

g.  February 10, 2026, at 11:35 a.m. from (971) 406-3913.

"Kevin, last note from me for now. Between our team, we have 25+ years of banking and finance experience, and we've helped businesses through every kidn of market. If now isn't the right time, no worries- just let me know. Otherwise, are you free for a quick call today?"

48.  In other words, Defendant texted Plaintiff's telephone number and attempted to solicit Plaintiff to purchase its loan services.

49.  The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters, as Plaintiff never provided his consent or requested the calls.

50.  Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

51.  On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

52.  Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

**National Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4) within four years prior to the commencement of this litigation and up until the date of trial.

53.  Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

54.  Plaintiff reserves the right to amend the Class definition.

9

55.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

56.    **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

57.    **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

58.    **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarketing practices.

59.    **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

60.    **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

      a.    whether Defendant violated the TCPA;

      b.    whether Defendant violated the TCPA willfully and knowingly;

      c.    whether Plaintiff is entitled to statutory damages;

10

d.      whether Plaintiff is entitled to treble damages;

e.      whether Defendant should be enjoined from further TCPA violations.

61.     **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

62.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

63.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

64.     Defendant violated the TCPA willfully or knowingly.

11

65.    Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

66.    Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding statutory damages to Plaintiff and Class Members;

C.    Providing the injunctive relief requested herein; and

D.    Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

*[Counsel signatures to follow on next page.]*

DATED AND SUBMITTED on March 31, 2026.

Respectfully submitted,

By: */s/ Cassandra P. Miller*
Cassandra P. Miller *(pro hac vice)*
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave Ste 1610
Chicago, IL 60611-7502
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com

Anthony I. Paronich (*pro hac vice*)
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the Putative Class*

13